**UNITED STATES of America, Plaintiff,**

v.

**MAPCO GAS PRODUCTS, INC.; Buckeye Gas Products Company; Jack .B. Morris and Michael R. Van Winkle, Defendants.**

No. LR–CR–88–122.

United States District Court,
E.D. Arkansas, W.D.

March 17, 1989.

See also 709 F.Supp 900.

Duncan S. Currie, and Jane E. Phillips, Dept. of Justice, Antitrust Div., Dallas, Tex., for plaintiff.

Richard A. Feinstein, and Peter Sholl, Washington, D.C., Thomas B. Staley, Robinson, Staley & Marshall, Little Rock, Ark., for Mapco Gas Products, Inc.

William R. Wilson, Jr., and Steve Engstrom, Wilson, Engstrom, Corum & Dudley, Little Rock, Ark., for Michael R. Van Winkle.

Barry F. McNeil, and Mark Kolitz, Haynes & Boone, Dallas, Tex., for Jack B. Morris.

John T. Schmidt, and Shirley E. Guntharp, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Okl., and Samuel A. Peronni, Perroni, Rauls & Looney, P.A., Little Rock, Ark., for Buckeye Gas Products Co.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently pending before the Court are the motions of defendants Mapco Gas Products, Inc. (Mapco), Buckeye Gas Products Company, Jack B. Morris and Michael R. Van Winkle, praying an order of the Court permitting defendants to withdraw their pleas of not guilty, previously entered in this proceeding on November 29, 1988, and enter new pleas of *nolo contendere* pursuant to Rule 11(b) of the Federal Rules of Criminal Procedure. After carefully considering defendants' motions and the Government's position in opposition to the request, the Court finds that defendants' request should be denied for the reasons hereinafter discussed.

### I. BACKGROUND

On November 1, 1988, the Grand Jury in and for the Eastern District of Arkansas rendered an indictment charging Mapco Gas Products Company, Inc., Buckeye Gas Products Company, Jack B. Morris and Michael R. Van Winkle with a conspiracy to suppress and restrain competition in the

sale of liquified petroleum gas to customers in East Central Arkansas.[1] As previously stated, defendants entered pleas of not guilty to the indictment and demanded a trial by jury. On March 8, 1989, defendants filed their motions for leave to withdraw their pleas of not guilty and enter pleas of *nolo contendere.*

Mapco and Buckeye are Delaware Corporations authorized to do business in the State of Arkansas, with headquarters located at Tulsa, Oklahoma. Mapco is a supplier of liquid petroleum gas in eleven states, including the State of Arkansas. Defendant Jack Morris, prior to the indictment and during the relevant time frame covered by the indictment, was employed by Mapco as regional manager. Michael R. Van Winkle, during the time frame covered in the indictment, was Buckeye's division manager at Memphis, Tennessee.

## II. DISCUSSION

■ Rule 11(b) under Rules of Criminal Procedure specifies:

A defendant may plead nolo contendere only with the consent of the Court. Such a plea shall be accepted by the Court only after due consideration of the views of the parties and the *interest of the public in the effective administration of justice.* (Emphasis supplied).

It is clear from the plain meaning of the words employed in Rule 11(b) that a trial court *"shall"* accept a *nolo contendere* plea *"only"* after considering the position of the Government and the enormous public interest in the effective and proper administration of criminal justice. While a plea of *nolo contendere,* for all practical purposes from the standpoint of punishment, is comparable to a plea of guilty, there is, however, a material difference when considering the fact that a *nolo contendere* plea may not be used against a

---

1. The Grand Jury Indictment defines "East Central Arkansas" as:

    [T]he State of Arkansas east of the White River that includes, but is not limited to, the counties of Cross, Jackson, Lee, Monroe, Poinsett, St. Francis and Woodruff.

2. It appears beyond question that a judgment upon a nolo contendere plea is a conviction.

defendant as an admission in any subsequent civil or criminal proceeding; nor does the plea affect the civil rights or impose any civil disqualification upon the defendant. See, 22 C.J.S., Criminal Law, § 425(4). In essence, a *nolo contendere* plea, in actuality, is an implied admission relevant only to the criminal proceeding in which the plea is asserted.[2] On the other hand, a plea of guilty is an express admission against interest and is admissible in any subsequent proceedings for whatever probative value it might possess. See: *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

The Government has opposed defendants' request for leave to withdraw their not guilty pleas and be permitted to plead *nolo contendere* contending, among other things, that it would not be in the public's interest to grant the request.

In an effort to conform to the mandate contained in Rule 11(b) to the effect that this Court must determine whether a *nolo contendere* plea would be in the "interest of the public in the effective administration of justice", the Court has considered the following factors:

A. The Nature of and the Impact of the Offense

■ As previously noted, defendants are charged with conspiring to suppress and restrain competition in the sale of liquified petroleum gas to customers in East Central Arkansas. This Court takes judicial notice that Eastern Arkansas, and particularly the area involved in this action, is, perhaps, the most economically depressed area, not only in the State of Arkansas, but in the nation as well. For example, the per capital income for the following counties, during the time frame contained in the indictment is as follows:

1. Lee           $6,287.00
2. St. Francis    $8,163.00

Consequently, in any subsequent proceeding where there is a question of conviction as opposed to one of guilt, the nolo plea is relevant and admissible. See: The Nature and Consequence of the Plea of Nolo Contendere, 33 Neb. L.Rev. 428 (1954).

3. Prairie    $8,317.00
4. Monroe     $7,798.00
5. Poinsett   $8,969.00
6. Woodruff   $8,853.00
7. Cross      $9,161.00
8. Jackson    $9,410.00

|          | (1986) | (1989) |
|----------|--------|--------|
| Jackson  | 15.8   | 15.8   |
| Woodruff | 15.3   | 14.6   |
| Poinsett | 12.4   | 11.6   |
| Prairie  | 10.9   | 10.1   |
| Monroe   | 11.3   | 9.3    |
| Cross    | 12.3   | 12.3   |

The January, 1989, Labor Market Information for Arkansas Counties discloses the following unemployment statistics for the areas in question:[3]

| COUNTY | UNEMPLOYMENT RATE | |
|--------|--------|--------|
|        | (1986) | (1989) |
| St. Francis | 21.6 | 23.4 |
| Lee    | 16.8   | 22.0   |

According to records supplied by the Economic and Medical Services Section of Arkansas Human Services Department, the following statistics represent the percentage of citizens in the designated counties receiving food stamps, Assistance to Families with Dependent Children (AFDC) and medicaid:

| COUNTY | FOOD STAMPS | AFDC | MEDI-CAID | FOOD STAMPS | AFDC | MEDI-CAID |
|--------|-------------|------|-----------|-------------|------|-----------|
|        | (January, 1986) | | | (February, 1989) | | |
| Lee | 5,538 | 1,694 | 3,319 | 5,076 | 1,920 | 3,618 |
| St. Francis | 7,520 | 2,799 | 5,499 | 8,099 | 3,042 | 6,214 |
| Poinsett | 5,025 | 1,214 | 3,034 | 4,058 | 1,154 | 4,137 |
| Monroe | 3,588 | 1,074 | 2,280 | 2,589 | 926 | 2,142 |
| Woodruff | 2,726 | 651 | 1,622 | 2,196 | 656 | 1,665 |
| Jackson | 3,260 | 932 | 2,432 | 2,506 | 852 | 2,426 |
| Cross | 4,325 | 1,096 | 2,382 | 2,920 | 901 | 2,245 |
| Prairie | 1,248 | 285 | 705 | 867 | 190 | 652 |

According to the 1980 U.S. Census data, the following constitute the educational characteristics for the following counties:

| COUNTY | PERCENT OF HIGH SCHOOL GRADUATES FOR MALES 25 YEARS OLD AND OVER | PERCENT OF HIGH SCHOOL GRADUATES FOR FEMALES 25 YEARS OLD AND OVER |
|--------|------|------|
| Cross | 44.8 | 42.4 |
| Jackson | 41.9 | 40.7 |
| Monroe | 41.6 | 58.4 |
| Poinsett | 41.3 | 37.8 |
| Prairie | 42.8 | 42.7 |
| St. Francis | 44.9 | 45.2 |
| Woodruff | 38.5 | 38.3 |
| Lee | 32.0 | 31.8 |

The Court also notes that the United States Congress, in 1988, committed this nation to a positive program, in endeavoring to remedy the economic and educational problems confronting the inhabitants in the "Delta Area" which encompasses the area in question, by enacting legislation that creates and funds a commission to, among other things, conduct an indepth investiga-

3. The following constitutes the population statistics for the relevant counties:

| Lee | 15,000 |
|-----|--------|
| Poinsett | 26,000 |
| St. Francis | 31,000 |
| Monroe | 12,900 |
| Woodruff | 10,500 |
| Jackson | 20,700 |
| Cross | 20,400 |
| Prairie | 10,100 |

tion and recommend solutions to cope with the socio-economic malaise.

■ Given the context in which defendants' conduct was initiated, although, allegedly, for a short period of duration, and the poverty of the geographic area involved, this Court is of the opinion that the impact of defendants' conduct was devastating and quite burdensome.

## B. The Position of the Government

The Government has taken a strong and positive position in opposing defendants' request to enter *nolo contendere* pleas. The Government emphasizes that the charge is a serious one and that a *nolo contendere* plea would not only minimize the seriousness of the offense, but would not serve as a deterrent in the future not only as to defendants, but other entrepreneurs who may be inclined to disregard the anti-trust laws of this nation in their quest to make a profit. While the position of the Government is in no way central and dispositive in considering defendants' request, this Court is persuaded that the Government's argument has merit.

## C. Public Interest.

The Court notes from the record that following the appearance of Joseph Stienberg, who cooperated with the Government in the investigation of this matter, before the Grand Jury, the following events occurred:

1. Stienberg's vehicle was intentionally run off the road; and,

2. His home was riddled with "gunshot[s]"; and,

3. Stienberg was "shot at and wounded in the gunfire".

The Court also notes that there is currently pending in this Court a civil class action instituted by the State of Arkansas seeking to recover damages from some of the defendants in behalf of the following designated class members:

"[A]ll Arkansas governmental subdivisions and all Arkansas public entities (including, but not limited to, counties, cities, towns, municipalities, townships, improvement districts, public utilities, public schools, school districts, and public hospitals) and all private business entities (including, but not limited to, proprietorships, partnerships, corporations, institutions, associations and other business and professional entities or agencies, and all private utilities) that purchased LP Gas from one or more of the Defendants or their co-conspirators at any time since November 23, 1984." See, *State of Arkansas v. Mapco Gas Products, et al,* Civil Action No. LR–C–88–806.

The Court also notes that Jack B. Morris, a defendant herein and former regional manager for Mapco, is, allegedly, responsible for initiating the conduct involved in this action. While Mr. Morris is no longer responsible for price decisions involving the retail sale of liquified petroleum gas, he is still an employee of Mapco.

This Court's greatest concern, in endeavoring the analyze and resolve the issue before the Court objectively, is whether a *nolo contendere* plea, in this proceeding, would be in the best interest of the public, when it is incumbent upon this Court to administer criminal justice fairly and impartially and without regard to one's economic, social or political standing in the community.

After carefully considering the totality of the factors discussed in this opinion, this Court is unable to find a compelling reason for permitting the defendants to withdraw their pleas of not guilty and substitute pleas of *nolo contendere.*

During the course of the hearing set by this Court to receive oral arguments in support and opposition to defendants' request, defendants cited the case of *United States of America v. Yonkers Contracting Co., Inc.,* 689 F.Supp. 339 (S.D.N.Y.1988), as a case on all fours with the current proceeding wherein the trial judge permitted the defendant to withdraw its plea of not guilty and enter a plea of *nolo contendere.* But this Court hastens to point out that there was a factor present in *Yonkers* that is absent in the instant case. While the Court found in *Yonkers* that "there can

be no deterrent effect on this particular defendant by forcing it to go to trial or plead guilty, instead of *nolo contendere*, because defendant, just as Buckeye Gas Products Co. in the instant case, is a defunct corporate entity, the Court, in *Yonkers*, found also that "the death of Robert Leo who ran [Yonkers] single-handedly and made all pricing decisions, makes it extremely difficult for the company to defend itself against the charges" since Mr. Leo died before the proceedings in *Yonkers* commenced. There are no comparable impediments here that would hinder in any way defendants from having their day in court.

The Court would also note the situation currently before the Court is not comparable to situations where the plea of *nolo contendere* has been accepted because the proof in such actions is difficult and the borderline between legal and illegal conduct is somewhat blurred. See, *United States v. Bagliore*, 182 F.Supp. 714 (E.D.N. Y.1960).

Accordingly, defendants' motion for leave to withdraw pleas of not guilty and to enter pleas of *nolo contendere* is hereby denied.

IT IS SO ORDERED.